FILED
2014 Oct-31  AM 10:15
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **SHARON YOUNG,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Case No.: 2:13-CV-1738-VEH** |
| | ) |
| **UNITEDHEALTH GROUP LIFE** | ) |
| **INS. PLAN, et al,** | ) |
| | ) |
| **Defendants.** | ) |

---

## MEMORANDUM OPINION

On September 20, 2013, the plaintiff, Sharon Young, brought this action under the Employee Retirement Income Security Act, 29 U.S.C. § 1001, *et seq.* ("ERISA"), to recover benefits she alleges are due to her under the UnitedHealth Group Life Insurance Plan ("the Plan") (Count One). (Doc. 1 at 10-12). More specifically, the plaintiff seeks Accidental Death and Dismemberment ("AD&D") benefits for the death of her husband, who had both life insurance and AD&D coverage under the Plan. The plaintiff also seeks ERISA penalties, under 29 U.S.C. § 1132(c) and 29 C.F.R. 2560.503-1(h)(2)(iii), for the defendants' alleged failure to provide "all documents, records and other information relevant to claimant's claim for benefits" (Count Two). (Doc. 1 at 13).

The complaint names as defendants the Plan, United Health Group, Inc. ("UHG"), UnitedHealthcare Insurance Company ("UHIC"), and United Healthcare Services, Inc. ("UHS"). Each of the latter three defendants is described as "a 'fiduciary' of [t]he Plan" (doc. 1 at 3, 4), but their individual roles are not further or clearly defined therein. They are referred to in the complaint collectively as "United Healthcare."

The case comes before the court on the defendants' motion for summary judgment. (Doc. 15). Contained within the plaintiff's response to the motion is a "request" that this court reconsider an earlier order denying discovery. (Doc. 27 at 16-21). For the reasons stated herein, the request will be **DENIED**, the motion for summary judgment will be **GRANTED**, and this case will be **DISMISSED with prejudice**.

I.      STANDARD

    A.      <u>**Summary Judgment**</u>

Under Federal Rule of Civil Procedure 56, summary judgment is proper if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("[S]ummary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.") (internal quotation marks and citation omitted). The party requesting summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party has met its burden, Rule 56(e) requires the non-moving party to go beyond the pleadings in answering the movant. *Id.* at 324. By its own affidavits – or by the depositions, answers to interrogatories, and admissions on file – it must designate specific facts showing that there is a genuine issue for trial. *Id.*

The underlying substantive law identifies which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *Chapman*, 229 F.3d at 1023. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248. A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* If the evidence presented by the non-movant to rebut the moving party's evidence is merely colorable, or is not significantly probative, summary judgment

3

may still be granted. *Id.* at 249.

How the movant may satisfy its initial evidentiary burden depends on whether that party bears the burden of proof on the given legal issues at trial. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). If the movant bears the burden of proof on the given issue or issues at trial, then it can only meet its burden on summary judgment by presenting *affirmative* evidence showing the absence of a genuine issue of material fact – that is, facts that would entitle it to a directed verdict if not controverted at trial. *Id.* (citation omitted). Once the moving party makes such an affirmative showing, the burden shifts to the non-moving party to produce "significant, probative *evidence* demonstrating the existence of a triable issue of fact." *Id.* (citation omitted) (emphasis added).

For issues on which the movant does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways. *Id.* at 1115-16. First, the movant may simply show that there is an absence of evidence to support the non-movant's case on the particular issue at hand. *Id.* at 1116. In such an instance, the non-movant must rebut by either (1) showing that the record in fact contains supporting evidence sufficient to withstand a directed verdict motion, or (2) proffering evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. *Id.* at 1116-17. When responding, the non-movant

4

may no longer rest on mere allegations; instead, it must set forth evidence of specific facts. *Lewis v. Casey*, 518 U.S. 343, 358 (1996). The second method a movant in this position may use to discharge its burden is to provide affirmative *evidence* demonstrating that the non-moving party will be unable to prove its case at trial. *Fitzpatrick*, 2 F.3d at 1116. When this occurs, the non-movant must rebut by offering *evidence* sufficient to withstand a directed verdict at trial on the material fact sought to be negated. *Id.*

### B.   ERISA Framework

ERISA does not contain a standard of review for actions brought under 28 U.S.C. § 1132(a)(1)(B) challenging benefit eligibility determinations. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 108-09 (1989) ("Although it is a 'comprehensive and reticulated statute,' ERISA does not set out the appropriate standard of review for actions . . . challenging benefit eligibility determinations."). Moreover, the case law that has developed over time governing such standards has significantly evolved. A history of the evolution of these standards is useful to track its development and shed light on the current framework.

In *Firestone*, the Supreme Court initially established three distinct standards for courts to employ when reviewing an ERISA plan administrator's benefits decision: "(1) *de novo* where the plan does not grant the administrator discretion; (2)

arbitrary and capricious where the plan grants the administrator discretion; and (3) heightened arbitrary and capricious where the plan grants the administrator discretion and the administrator has a conflict of interest." *Capone v. Aetna Life Ins. Co.*, 592 F.3d 1189, 1195 (11th Cir. 2010) (citing *Buckley v. Metro. Life*, 115 F.3d 936, 939 (11th Cir. 1997) (discussing *Firestone*, 489 U.S. at 115)). In *Williams v. Bellsouth Telecomms., Inc.*, 373 F.3d 1132, 1137 (11th Cir. 2004), *overruled on other grounds by Doyle v. Liberty Life Assurance Co. of Boston*, 542 F.3d 1352 (11th Cir. 2008), the Eleventh Circuit fleshed out the *Firestone* test into a six-step framework designed to guide courts in evaluating a plan administrator's benefits decision in ERISA actions. When the Eleventh Circuit created the *Williams* test, the sixth step of the sequential framework required courts reviewing a plan administrator's decision to apply a heightened arbitrary and capricious standard if the plan administrator operated under a conflict of interest. *See id.* The Eleventh Circuit later modified this step in response to the Supreme Court's ruling in *Metropolitan Life Insurance Co. v. Glenn*, 554 U.S. 105, 115-17 (2008), which concluded that a conflict of interest should be weighed merely as "one factor" in determining whether an administrator abused its discretion. *See Doyle,* 542 F.3d at 1359 ("As we now show, *Glenn* implicitly overrules and conflicts with our precedent requiring courts to review under the heightened standard a conflicted administrator's benefits decision."). The Eleventh Circuit's current

6

iteration of the *Firestone* standard-of-review framework is found in *Blankenship v. Metro. Life Ins. Co.*, 644 F.3d 1350 (11th Cir. 2011), *cert. denied*, 132 S. Ct. 849:

> (1)    Apply the *de novo* standard to determine whether the claim administrator's benefits-denial decision is "wrong" (i.e., the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.
>
> (2)    If the administrator's decision in fact is "*de novo* wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.
>
> (3)    If the administrator's decision is "*de novo* wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).
>
> (4)    If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.
>
> (5)    If there is no conflict, then end the inquiry and affirm the decision.
>
> (6)    If there is a conflict, the conflict should merely be a factor for the court to take into account when determining whether an administrator's decision was arbitrary and capricious.

*Id.* at 1355.[1] All steps of the analysis are "potentially at issue" where a plan vests discretion to the plan administrator to make benefits determinations. *See id.* at 1356 n.7. Conversely, then, where a plan does *not* confer discretion, the court simply

---

[1] "In ERISA cases, the phrases 'arbitrary and capricious' and 'abuse of discretion' are used interchangeably." *Blankenship*, 644 F.3d at 1355 n.5.

applies the *de novo* review standard established by the Supreme Court in *Firestone*. *See* 489 U.S. at 115 ("[W]e hold that a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.").

## II.   FACTS

### A.   <u>The Plan</u>

As part of the Plan, UHG sponsors an Accidental Death and Dismemberment plan ("the AD&D Plan") for the benefit of its eligible employees and their dependents. The AD&D Plan is governed by ERISA.[2,3]

---

[2] The parties define "the Plan" differently. The court uses "the Plan" when referring to the larger Life Insurance Plan, and "the AD&D Plan" when referring to the AD&D portion of the Life Insurance Plan.

[3] The facts in this paragraph are offered by the defendants in their memorandum in support of their motion. (Doc. 16 at 3). The plaintiff writes in response to this fact:

> 1. Young admits that the Plan's Form 5500 filed with the Department of Labor identifies UnitedHealth Group Inc. ("[UHG]") as the "plan sponsor." Young also admits that the Plan is governed by ERISA. Except as expressly admitted herein, [d]efendants' assertion of fact as to paragraph 1 is denied.

(Doc. 27 at 7). The court's summary judgment scheduling order provides:

> Any statements of fact that are disputed by the non-moving party must be followed by a specific reference to those portions of the evidentiary record upon which the dispute is based. *All material facts set forth in the statement required of the moving party will be deemed to be admitted for summary judgment purposes unless controverted by the response of the party opposing summary judgment.*

UHG is the Plan Administrator and, under the Plan, has "the sole and exclusive authority and discretion to interpret the benefit plans' terms and benefits under them, and to make factual and legal decisions about them." (Doc. 17-1 at 13). According to the Plan, "[b]enefits are paid through insurance coverage that [UHG] purchases from its affiliate, [UHIC]." (Doc. 17-3 at 25). The Plan states that the "Insurance Carrier" is UHS. (Doc. 17-3 at 25).

The Plan states that UHG, as Plan Administrator, "has authority to delegate, and has delegated, certain authority and duties to other parties who are third-party administrators, fiduciaries and/or trustees." (Doc. 17-1 at 13). UHG claims that it "has delegated its authority to administer the Plan to UHIC, the third-party who insures the plan." (Doc. 16 at 3). The plaintiff disputes "that UHG[] has properly and expressly delegated its Plan authority to [UHIC]" (doc. 27 at 7), but acknowledges that UHIC has issued an insurance policy which provides the benefits at issue in this case.[4] The following language from the insurance policy issued by UHIC provides that UHIC has discretion to make benefits decisions:

---

(Doc. 3 at 17) (emphasis in original).  The general statement by the plaintiff that "[e]xcept as expressly admitted herein, [d]efendants' assertion of fact as to paragraph 1 is denied," fails to identify what specific portion of the fact is disputed, and also fails to provide a specific reference to the record which supports the dispute.  The entire statement is thus deemed to be admitted for purposes of the motion for summary judgment.

[4]The full text of the policy can be found in the record at documents 17-6 and 17-7.

9

Discretionary Authority: When making a benefit determination under the Policy, [UHIC has] discretionary authority to determine the Covered Person's or Dependent's eligibility, if applicable, for benefits and to interpret the terms and provisions of the Policy.

(Doc. 17-6 at 29). Still, the plaintiff disputes "that this quoted language is a legally valid grant of discretionary authority under ERISA." (Doc. 27 at 8).

Regarding eligibility for AD&D benefits, the insurance policy provides that, before benefits are payable, the Covered Person must give UHIC proof that:

a.      "Injury occurred while the insurance was in force under this section;"

b.      "loss occurred within 365 days after the Injury;" and

c.      "loss was due to Injury independent of all other causes."

((Doc. 17-7 at 6) (emphasis added). The insurance policy defines Injury as: "A bodily Injury resulting directly from an accident and independently of all other causes." (Doc. 17-6 at 28) (emphasis added). The term "accident" is not defined in the policy. One "limitation" identified in the Policy addresses intoxication in express language and reads as follows: "**Limitations:** We will not pay a benefit for a loss caused directly or indirectly by: … 6. driving while intoxicated, as defined by the applicable state law where the loss occurred." (Doc. 17-7 at 2) (bold in the original). No other language addressing intoxication exists in the policy.

### B.   Mrs. Young's Claim for Benefits

Sharon Young works for UHS as a customer service representative. Through her job, she is eligible to purchase life insurance under the Plan. Because Mrs. Young is covered, her spouse Johnny Leon Young was also able to obtain coverage. At some point, Mrs. Young elected $20,000 in life insurance for her husband. When she made her election, she also elected the optional AD&D coverage. Under the terms of the AD&D Plan, the optional AD&D coverage doubles the life insurance policy amount if a "Covered Individual" dies "as the result of a Covered Injury." (Doc. 17-2 at 61). Therefore, in addition to $20,000 in life insurance coverage, the plaintiff's husband had $20,000 of AD&D coverage.[5]

Johnny Young died on September 30, 2012. The police report prepared on September 30, 2012, states that Mr. Young's "friend stated that he had not seen [him] since the day prior." (Doc. 17-9 at 34). The police report also shows that Mr. Young was not behind the wheel of a car when he was found dead and therefore was not "driving" as that term is used in the aforementioned policy limitation.

An autopsy was performed on October 1, 2012. The coroner's report noted that "[t]oxicological analysis detected a blood ethanol concentration of 0.36 g/dL, a

---

[5] The plaintiff disputes the $20,000 figure only "to the extent that this statement ignores the interest that has accrued since payment of this benefit was first due." (Doc. 27 at 8).

concentration greater than the level at which an individual is considered legally intoxicated if driving a motor vehicle." (Doc. 17-5 at 6). The report also noted that Mr. Young "was found dead face down with his body leaning against a low retaining wall. He had evidently fallen and came to rest with his shoulders and face in a downward position and his trunk and legs extending directly upward. Remaining in this position would compromise a person's ability to breathe properly." (Doc. 17-5 at 6). The coroner then concluded that "Johnny Leon Young died as a result of positional asphyxia. Ethanol intoxication contributed to this death." (Doc. 17-5 at 6). The Death Certificate also identified Johnny Young's cause of death as "positional asphyxia" and listed "ethanol intoxication" as another "significant condition[] contributing to death." (Doc. 17-4 at 25).[6]

Mrs. Young submitted a claim for life insurance and AD&D benefits on October 11, 2012. In a letter dated October 23, 2012, UHIC informed Mrs. Young that it would pay her the full amount of her husband's life insurance policy, $20,000, plus interest, minus $5,273.95 which Mr. Young had assigned to Davenport & Harris

---

[6]The plaintiff denies the facts in this paragraph only "where [they are] inconsistent with [the Coroner's] Report as a whole." (Doc. 27 at 9, ¶¶ 9, 10, 11, 12, 13). As previously noted (*see* note 3 *supra*), the court's summary judgment scheduling order requires a much more specific objection. (*See,* doc. 3 at 17). Because of the failure to specifically deny any particular fact, the court deems the facts in this paragraph, offered by the defendants, to be admitted. The court also notes that the facts accurately quote the materials discussed therein. There has been no objection to the use of those materials, or the statements therein, in ruling on the motion for summary judgment.

Funeral Home Inc. (Doc. 17-4 at 27).

The AD&D benefits were another matter. By a separate letter, also dated October 23, 2012, UHIC requested additional information so that it could further evaluate Mrs. Young's claim for AD&D benefits. (Doc. 17-4 at 28). In particular, UHIC sought: 1) a copy of the police report related to Mr. Young's death, and 2) a copy of the coroner's report and toxicology results. (Doc. 17-4 at 28).[7]

On October 26, 2012, UHIC wrote a letter to the plaintiff advising her that her "claim is not payable since Mr. Young's cause of death was not independent of all other causes." (Doc. 17-5 at 11). The letter quoted the policy language which provides that there is coverage for Mr. Young's death as long as his death "was due to Injury independent of all other causes." (Doc. 17-5 at 11).  It also advised the plaintiff that UHIC had considered the issues related to alcohol which were discussed in the aforementioned death certificate and autopsy report, and were also discussed in the October 16, 2012, toxicological analysis report mentioned in the autopsy

---

[7] In response to this fact, which was offered by the defendants, the plaintiff writes: "The letter says nothing about the [d]efendants' reasons for making the request and, in the absence of discovery testing the completeness of the claim file, there is no evidence that [sic] showing these materials to have been the only materials considered or relied upon by the [d]efendants when this claim was decided." (Doc. 27 at 10). This seems to be a "run-on" sentence which does not make any sense to the court. However, to the extent that the plaintiff is arguing that she needs additional discovery prior to responding to the motion for summary judgment, the court has previously considered and denied her request. (Docs. 19, 25). As noted below, the request is again denied.

report. (Doc. 17-5 at 11).[8] The letter concluded that "since Mr. Young's fall and Positional Asphyxia was not considered independent of all other causes . . . we are unable to approve your claim for accidental death benefits." (Doc. 17-5 at 12).

By letter dated January 7, 2013, Mrs. Young appealed UHIC's decision. By letter dated February 19, 2013, UHIC requested that Mrs. Young "contact [it] within 30 days of receipt of [the] letter to advise if you intend to provide additional information for us to consider in the appeal review." (Doc. 17-7 at 21). Sixty-two days later, on April 22, 2013, UHIC sent Mrs. Young another letter explaining, *inter alia*, that it had not received any additional information, but that Mrs. Young would have an additional fifteen days to submit evidence in support of her appeal. (Doc. 17-12 at 4).

---

[8] Again, the coroner's report noted that:

– "[t]oxicological analysis detected a blood ethanol concentration of 0.36 g/dL, a concentration greater than the level at which an individual us considered legally intoxicated if driving a motor vehicle," (doc. 17-5 at 6);

– "[Mr. Young] was found dead face down with his body leaning against a low retaining wall. He had evidently fallen and came to rest with his shoulders and face in a downward position and his trunk and legs extending directly upward. Remaining in this position would compromise a person's ability to breathe properly" (doc. 17-5 at 6); and

– "Johnny Leon Young died as a result of positional asphyxia. Ethanol intoxication contributed to this death" (doc. 17-5 at 6);

The Death Certificate also identified Johnny Young's cause of death as "positional asphyxia" and listed "ethanol intoxication" as another "significant condition[] contributing to death." (Doc. 17-4 at 25).

14

Through her lawyer, and in response to the April 22nd letter, Mrs. Young submitted photographs showing Johnny Young's body as he was found by the police. This was the only evidence that Mrs. Young submitted. Additionally, Mrs. Young's attorney argued in his cover letter that UHIC had misinterpreted the policy in making its decision and that UHIC had erroneously applied the "driving while intoxicated" exclusion. Mrs. Young's attorney concluded his letter by saying: "You have no evidence of intoxication at the time of the injury and no reasonable basis for continuing to deny the claim." (Doc. 17-12 at 6-7).

By letter dated May 24, 2013, UHIC again denied the plaintiff's claim, citing the provision requiring that Mr. Young's death result from an "Injury independent of all other causes." (Doc. 17-13 at 29). UHIC then explained in the letter: "Please be advised we are not denying the claim based on an exclusion for driving while intoxicated; we are aware Mr. Young was not driving. We are denying the claim because Mr. Young's death was not due to bodily injury independent of all other causes as ethanol intoxication contributed to his death." (Doc. 17-13 at 30).

### C.   Mrs. Young's Claim for Failure To Provide ERISA Documents

The Summary Plan Description ("SPD") contained in the United Healthcare Services, Inc. employee handbook explains:

If you have questions about your benefits under any of the plans, you

15

> can get additional information in a variety of ways. For example, for more information about any of the plans or benefits in this Benefits Handbook, or to get copies of plan summaries, SPDs or official plan documents, you can refer to "HRdirect > Health & Wellness" on the United HRdirect Web site or contact United HRdirect at 1-800-561-0861.

(Doc. 17-3 at 21). Additionally, the SPD directs employees to send requests for documents to the following address:

> Contact for Plan Documents
> UnitedHealth Group Incorporated
> c/o United HRdirect
> P.O. Box 744919
> Houston, TX 77274
> Phone: 1-800-561-0861

(Doc. 17-3 at 25).

On January 7, 2013, Mrs. Young's lawyer requested certain ERISA documents, including the insurance policy, the SPD, and any other relevant documents "specified within 29 U.S.C. § 1001 et. seq. and 29 C.F.R. § 2560.503-1." (Doc. 17-5 at 13). Mrs. Young's lawyer sent this request to United Healthcare, P.O. Box 1459, Minneapolis, MN 55440. (Doc. 17-5 at 13).   At some point between January 22, 2013, and February 5, 2013, Mrs. Young's lawyer sent another letter to Ms. Debbie Mullis saying that United Healthcare had confused Mrs. Young's document request with a subpoena. (Doc. 17-6 at 7) On February 15, 2013, Mrs. Young spoke with Ms. Kimberly Blais about Mrs. Young's document request. Ms. Blais informed Mrs.

16

Young's attorney that she would forward the document request to the appropriate department. Both Mrs. Young's attorney and UHIC confirmed this conversation in writing. (Doc. 17-7 at 20-21). UHIC's letter confirming the conversation, sent on February 19, 2013, informed Mrs. Young's lawyer that "Your request for the Summary Plan Description and additional documents has been forwarded to the Human Resource Department at UnitedHealth Group for response. You will be receiving a response from them under separate cover." (Doc. 17-7 at 21). Additionally, UHIC's letter of February 19, 2013, included a copy of the Certificate of Coverage for its insurance policy with United Healthcare Services, Inc. and stated that it included " a copy of [the] claim file." (Doc. 17-7 at 21). On March 1, 2013, UnitedHealth Group sent Mrs. Young a copy of the SPD, and the most recent Form 5500, and an additional copy of the Certificate of Coverage.

In response to Mrs. Young's ERISA production request sent January 7, 2013, the defendants did not produce, and still have not produced, their claims manual and internal memoranda advising as to how the policy should be interpreted.

## III.   ANALYSIS

### A.   <u>Discovery Is Not Appropriate in This Case</u>

In the plaintiff's response to the motion she first states "[b]efore getting to the merits of the [d]efendants' motion . . . Young asks the [c]ourt to revisit the

prematurity of that motion given the posture of this case." (Doc. 27 at 4).

### 1.    *The Plaintiff's Request Does Not Meet the Standard for Reconsideration*

As implied by the plaintiff's use of the term "revisit," the court has denied this same request once before. (*See* doc. 25 – "ORDER granting 18 Motion for Protective Order; denying 19 Motion for Relief under Rule 56(d); denying 20 Motion to Compel. All discovery in this case is stayed pending further order of this court."). Because the court has already ruled on this issue, it will treat the plaintiff's request as a motion for reconsideration.

The undersigned has noted previously that

> [i]n the interests of finality and conservation of scarce judicial resources, reconsideration of an order is an extraordinary remedy and is employed sparingly. *See United States v. Bailey*, 288 F.Supp.2d 1261, 1267 (M.D.Fla.2003); *Pennsylvania Ins. Guar. Ass'n v. Trabosh*, 812 F.Supp. 522, 524 (E.D.Pa.1992); *Spellman v. Haley*, No. 97–T–640–N, 2004 WL 866837, at *2 (M.D.Ala. Feb. 22, 2002) ("[L]itigants should not use motions to reconsider as a knee-jerk reaction to an adverse ruling.") (citation omitted). Indeed, as a general rule, "[a] motion to reconsider is only available when a party presents the court with evidence of an intervening change in controlling law, the availability of new evidence, or the need to correct clear error or manifest injustice." *Summit Med. Ctr. of Ala., Inc. v. Riley*, 284 F.Supp.2d 1350, 1355 (M.D.Ala.2003).

> It is well established in this circuit that "[a]dditional facts and arguments that should have been raised in the first instance are not appropriate grounds for a motion for reconsideration." *Rossi v. Troy State University*, 330 F.Supp.2d 1240, 1249 (M.D.Ala.2002) (denying motion to reconsider when plaintiff failed to submit evidence in question

18

prior to entry of order and failed to show good cause why he could not have done so). Furthermore, the Eleventh Circuit has declared that "a motion to reconsider should not be used by the parties to set forth new theories of law." *Mays v. U.S. Postal Service*, 122 F.3d 43, 46 (11th Cir.1997); *see also Russell Petroleum Corp. v. Environ Products, Inc.*, 333 F.Supp.2d 1228, 1234 (M.D.Ala.2004) (relying on *Mays* to deny motion to reconsider when movant advanced several new arguments); *Coppage v. U.S. Postal Service*, 129 F.Supp.2d 1378, 1379–81 (M.D.Ga.2001) (similar); *Richards v. United States*, 67 F.Supp.2d 1321, 1322 (M.D.Ala.1999) (same).

Notwithstanding these limitations, reconsideration is appropriate to correct manifest errors of law or fact. See Fed.R.Civ.P. 60(b); *Caisse Nationale de Credit Agricole v. CBI Industries, Inc.*, 90 F.3d 1264, 1269 (7th Cir.1996) ("Motions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence."); *Summit*, 284 F.Supp.2d at 1355 ("A motion to reconsider is only available when a party presents the court with evidence of an intervening change in controlling law, the availability of new evidence, or the need to correct clear error or manifest injustice."). The grant or denial of a motion to reconsider is left to the discretion of the district court. *See Chapman v. AI Transport*, 229 F.3d 1012, 1023–24 (11th Cir.2000).

*Busby v. JRHBW Realty, Inc. d/b/a RealtySouth*, 642 F. Supp. 2d 1283, 1286 (N.D. Ala. 2009) (Hopkins, J.) (footnotes omitted). The plaintiff's request to "revisit" this issue does not satisfy (or even argue) this standard, and the court affirmatively finds that it is not satisfied. The request is due to be denied for that reason alone.

    **2.**    ***Even Considering the Arguments in the Plaintiff's Brief Response to the Motion for Summary Judgment,[9] the Request***

---

[9] In the instant request, the plaintiff writes that she incorporates into her arguments "the reasons argued in Docs. 22, 23, and 24." (Doc. 27 at 20). Document 22 is the <u>defendants'</u> "Reply

**Is Due To Be Denied**

The plaintiff contends that "[t]he procedural prematurity of the [d]efendants' summary judgment motion arises directly from . . . [the ERISA] six-step analysis." (Doc. 27 at 16). After setting out that analysis, she writes:

> The [d]efendants' motion reverses [the first two steps of the ERISA analysis] by contending first that they acted under a valid grant of discretionary authority, which of course is in accordance with Step Two. They then argue in turn that the discretion accorded to them means that the Court's review over the de novo correctness of their claims decision – which occurs under Step One -- is confined to the "record" they have filed with the Court.

(Doc. 27 at 17). By way of review, and for ease of reference, the court notes that "step one" requires the court to "[a]pply the *de novo* standard to determine whether the claim administrator's benefits-denial decision is "wrong" (i.e., the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision." *Blankenship*, 644 F.3d at 1355. "Step two" is only consulted if the court determines that the administrator's decision was *de novo* wrong. Thereafter, the

---

in Support of Their Motion for a Protective Order," and document 23 is the <u>defendants'</u> "Response to Plaintiff's Motion for Relief under Federal Rule of Civil Procedure 56(d) and Motion to Compel." The court will assume that the plaintiff did not intend to incorporate by reference the <u>defendants'</u> arguments <u>against</u> her request for discovery, but instead sought to incorporate both document 24, which is the plaintiff's "Reply in Support of Her Motion for Relief under Rule 56(d) and Her Motion to Compel," as well as document 21, which is the plaintiff's "Consolidated Memorandum of Law in Support of Discovery Prior to Disposition of Defendants' Motion For Summary Judgment and Response in Opposition to Defendants' Motion for Protective Order." The court will not revisit the incorporated arguments here. The request is **DENIED** to the extent that it is based on those previously considered grounds.

second step requires the court to "determine whether [the administrator] was vested with discretion in reviewing claims; if not, [the court must] end judicial inquiry and reverse the decision." *Id.* The plaintiff argues that the defendants' supposed "reversal" of the first two steps

> raises two questions the Court must resolve, both as a matter of procedure under the *Williams* analytical framework and as a matter of fundamental fairness to Young: (1) Did the Defendants make a discretionary claims decision in the first instance, such that the Court's review for "de novo correctness" is confined to that information that was known to the ERISA administrator at the time it made its decision? and (2) If the Defendants did make a discretionary decision and the Court's review record is indeed limited, is the record the [d]efendants have presented to the Court complete?

(Doc. 27 at 17). The plaintiff argues that these questions cannot be answered without discovery.

First, the defendants have not reversed the first two steps of the ERISA analysis. In their brief in support of the motion for summary judgment, the defendants begin by clearly stating that "the Court is asked to go no further than Step One." (Doc. 16 at 13). "[Eleventh Circuit] law is clear; even under the first step of the analysis, where the court determines whether the administrator was wrong under a '*de novo*' standard, '[w]e are limited to the record that was before [the administrator] when it made its decision.'" *Gipson v. Admin. Comm. Of Delta Air Lines, Inc.*, 350 F. App'x 389, 394 (11th Cir. 2009) (quoting *Glazer v. Reliance Standard Life Ins.,*

524 F.3d 1241, 1247 (11th Cir.2008)). As shown below, the decision of the administrator was <u>not</u> *de novo* wrong. Accordingly, it is unnecessary to determine whether the defendants "ma[de] a discretionary claims decision in the first instance."[10, 11]

---

[10] The confusion was created because, after discussing the first step of the ERISA review, the defendants then, for the first time in their brief, discuss the scope of the record to be considered in the <u>next</u> step writing "[a]dditionally, because both the SPD and the insurance policy granted UHIC discretion to make benefits decisions, <u>the scope of this court's review is limited to the information known to the administrator at the time it made its decision</u>." (Doc. 16 at 13) (emphasis added). Because the defendants did not mention the scope of the record to be considered at the first stage of the review, the plaintiff apparently assumed that this court's review is confined to the record that was before the administrator only if "the [d]efendants ma[de] a discretionary claims decision in the first instance." That is not the law.

[11] The plaintiff argues:

The first question is no different than the issue addressed in *Anderson v. Unum Life Ins. Co. of Am.*, 414 F. Supp. 2d 1079 (M.D. Ala. 2006). As Judge DeMent correctly held in that case, proving the existence of discretion under the Step Two of the *Williams* [analysis] involves two showings: (1) that there is a valid, express grant of discretionary authority in the Plan documents to the third-party claims administrator and (2) that the third-party claims administrator identified in that grant of authority is the same entity that actually decided the claim. *Id.* at 1100. Here, the second question remains entirely unknown due to the existing discovery prohibition in this action. Without discovery showing how the Defendants move claims through their system and proving who employed those persons who decided this claim, Young is unable to respond fully to assertion that summary judgment should be entered against certain Defendants on the basis they are not "proper parties." See Def.'s Mem. at 18-19. This, in turn, also impacts the discretion question.

(Doc. 27 at 17-18). The plaintiff's citation to *Anderson* is unpersuasive because, as noted, the court need not determine whether there was a grant of discretionary authority. Further, the court agrees that "[p]roof of who is the plan administrator may come from . . . the factual circumstances surrounding the administration of the plan, even if these factual circumstances contradict the designation in the plan document." *Hamilton v. Allen-Bradley Co.*, 244 F.3d 819, 824 (11th Cir. 2001). However, discovery on, and a resolution of, this issue is unnecessary in light of the court's holding that the administrator's decision, whichever entity made it, was *de*

The plaintiff calls the second question, whether the record is complete, "the most pressing and urgent from Young's standpoint because it is already known that the [d]efendants have not produced all the documents 'relevant' to her claim under 29 C.F.R. § 2560.503-1(m)(8)." (Doc. 27 at 18). In this argument, the plaintiff first confuses the issue of whether the defendants complied with the regulations to produce all "relevant" documents, with the altogether different issue of whether the record before this court contains everything which was before the administrator at the time it made its decision. The plaintiff points to no evidence considered by the administrator which is not in the current record. The court affirmatively finds that the record here is the same as what was before the administrator at the time it made its decision.[12]

Still, the plaintiff argues she needs documentation concerning

the Defendants' claims procedures, which the Court will note are not part of the "record" the Defendants have filed with the Court.

. . .

---

*novo* correct.

[12] Importantly, even if the court could consider, at the *de novo* step, extrinsic evidence relating to whether there is coverage, or could order discovery regarding same, the plaintiff has pointed to no such evidence, nor has she explained how any such evidence, if found, could help her case. *See, Wayton v. United Mine Workers of Am. Health & Ret. Funds*, 568 F. App'x 738, 743 (11th Cir. 2014) (*citing Barfield v. Brierton*, 883 F.2d 923, 931 (11th Cir.1989) (ERISA plaintiff denied discovery where he failed to indicate how discovery would have aided his claim).

> Because claims manuals address interpretation of policy provisions (like those at issue here) and otherwise set forth the rules for the administration of given insurance policies serving as "plan documents," they are directly relevant and subject to production. Without them, the court will be making an uninformed decision ignoring plainly relevant evidence showing whether the administrator's interpretation <u>in this instance</u> impermissibly deviates from interpretations given to these same terms in other claims.

(Doc. 27 at 19) (emphasis in original). The plaintiff does not state at what step of the ERISA analysis this information would be relevant.[13] It seems clear, however, that the plaintiff is seeking to show the impact of a potential conflict of interest on the claims decision. However, in cases such as this one, where the review ends at the *de novo* step, such information is not relevant. *See, Blair v. Metro. Life Ins. Co.*, 569 F. App'x 827, 832 (11th Cir. 2014) ("We agree with the district court that Blair's discovery request was unnecessary to resolve the case because the court correctly found that MetLife's decision to terminate LTD benefits was de novo correct. This finding ends the analysis at step one. Accordingly, the court did not need to weigh MetLife's admitted conflict because that analysis is only necessary at the sixth and final step of our Circuit's multi-step test for reviewing ERISA plan administrator's benefit decisions."). Notably, neither of the two cases cited by the plaintiff concern

---

[13] It has been noted that "the applicable standard of review will . . . shape the permissible scope of discovery in ERISA cases." *Featherstone v. Metro. Life Ins. Co.*, 223 F.R.D. 647, 651 (N.D. Fla. 2004).

discovery at the *de novo* step.  *See, Cagle v. Bruner*, 112 F.3d 1510, 1518 (11th Cir. 1997) (in the context of the "arbitrary and capricious standard of review," the court noted that discovery would be appropriate to determine whether "the Fund's interpretation of the plan was made rationally and in good faith."); *Melech v. Life Ins. Co. of N. Am.*, 857 F. Supp. 2d 1281, 1285 (S.D. Ala. 2012) (allowing discovery of plan documents where there was an "admitted" conflict of interest).[14]

The plaintiff also states that

the "record," of course, also includes plan documents that are subject to Young's 29 U.S.C. § 1132(c) [Count Two] claim. At this time, Young simply cannot know for sure what she lacks, and therefore needs discovery to ascertain whether the [d]efendants' representation that all 'plan instruments' have indeed been produced.

(Doc. 27 at 20). The only specific document she requests in this regard is "a document affirmatively showing UHIC to have been granted authority by the named administrator." (Doc. 27 at 20). She continues:

there is only the policy itself which speaks to this, but the policy is no better than a random person proclaiming that they are the agent of another. Without an express agency agreement, there is no agency relationship. The same goes for grants of discretionary authority; there must be an instrument showing an <u>express grant</u>.

---

[14] Of course, the plaintiff might be arguing that the information is relevant to something other than a conflict of interest issue. If that is so, her argument fails because she has not explained how the requested discovery would impact the determination of whether the administrator's decision was *de novo* correct.  Further, it is not the court's place to make arguments for the plaintiff and the court certainly cannot read her mind.

25

(Doc. 27 at 20). Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Because, as this court has already noted, it is unnecessary to determine at step one of the ERISA analysis, whether the defendants "ma[de] a discretionary claims decision in the first instance," it is unclear what relevance this information has to the plaintiff's claims for benefits. Further the plaintiff has made no showing that the documents would be of the type which the defendants were required to produce under 29 U.S.C. § 1132(c).[15]

The request to revisit the issue of discovery will be denied in all respects.

**B.      The Decision To Deny Benefits Was _De Novo_ Correct**

       1.      *The Uncontroverted Evidence Establishes That the Plaintiff Has Not Proven Coverage*

The evidence in this case establishes that the decision of the claims administrator was *de novo* correct. The AD&D policy requires that the plaintiff would recover if her insured sustained "[a] bodily Injury resulting directly from an accident and <u>independently of all other causes</u>." (Doc. 17-6 at 28) (emphasis added). Importantly, the provision is not <u>exclusion</u>, as argued by the plaintiff,[16] but is in fact

---

[15] In light of the fact that the court finds this claim to be without merit (see below), the discovery issue on this point is moot.

[16] *See*, doc. 27 at 22-23.

a prerequisite or condition to coverage. The plaintiff bears the burden to show that she is covered by the provision. *See, Horton v. Reliance Standard Life Ins. Co.*, 141 F.3d 1038, 1040 (11th Cir. 1998) (plaintiff suing under ERISA benefits bears the burden of proving his entitlement to contractual benefits). The plaintiff has provided no evidence that her husband's death was due to an accident that was independent of all other causes, including alcohol. She has produced no evidence to counter all of the evidence which establishes that alcohol was a contributing cause.[17]

In *Veal v. Nationwide Life Ins. Co.*, No. 5:09-CV-356/RS/MD, 2010 WL 1380170 (N.D. Fla. Mar. 31, 2010), the district court, construing similar policy language, reached the same result this court now reaches. In *Veal*, the AD&D policy at issue provided coverage for an "injury," which the policy defined as "bodily injury caused by the direct result of an *Accident* occurring while an *Insured's* coverage is in effect under this Policy which results independently of all other causes in a covered loss." (Doc. 27-1 at 4) (italics in original).[18] There was also an exclusion "for any loss resulting in whole or part from, or contributed to by, or as a natural or probable

---

[17] In particular, the Coroner's report found that "Johnny Leon Young died as a result of positional asphyxia [and that] [e]thanol intoxication contributed to this death." (Doc. 17-5 at 6). Further, the Death Certificate also identified Johnny Young's cause of death as "positional asphyxia" and listed "ethanol intoxication" as another "significant condition[] contributing to death." (Doc. 17-4 at 25).

[18] The plaintiff has provided a PACER version of the policy which was at issue in *Veal*.

consequence of . . . .[t]he Insured being deemed and presumed, under the law of the

locale in which the Injury is sustained, to be under the influence of alcohol or

intoxicating liquors." *Veal*, 2010 WL 1380170, at *1. The *Veal* court found that

> the record supports the administrator's finding that Mr. Veal's fall while
> intoxicated <u>did not constitute a covered "injury caused by the direct
> result of an accident ... which results independently of all other causes
> in a covered loss."</u> The record <u>also</u> supports the administrator's finding
> that the health and alcohol exclusions applied. The record shows that
> Mr. Veal was an alcoholic and that alcohol contributed to his death.

*Veal*, 2010 WL 1380170, at *2 (emphasis added). This court is persuaded by the

opinion in *Veal* that its logic is sound.[19]

### 2.    *The Policy Language Is Not Ambiguous*

The plaintiff argues that the insurance policy in this case is ambiguous. If so,

"application of the rule of *contra proferentem* is appropriate in resolving ambiguities

in insurance contracts regulated by ERISA. . . . Application of this rule requires us

to construe ambiguities against the drafter[.]"   *Lee v. Blue Cross/Blue Shield of

Alabama*, 10 F.3d 1547, 1551 (11th Cir. 1994).

ERISA itself provides no guidance on what constitutes an "ambiguity." The

_____

[19] The plaintiff insists that *Veal* is distinguishable because, she claims, the court found
coverage to be <u>excluded</u>. (Doc. 27 at 28). However, it is clear from the holding that the court
found <u>both</u> that the condition precedent to coverage was not satisfied <u>and</u> that coverage was
excluded. Further, the court rejects the plaintiff's argument that the "foreseeability" language in
the *Veal* policy, which she contends is absent in the instant policy, had some effect on the
decision. There is no such indication in the *Veal* court's holding.

Eleventh Circuit has noted:

> Although comprehensive in many respects, ERISA is silent on matters of contract interpretation. The courts have thus produced a body of federal common law providing such guidance. *Horton v. Reliance Standard Life Ins. Co.,* 141 F.3d 1038, 1041 (11th Cir.1998) ("Courts have the authority 'to develop a body of federal common law to govern issues in ERISA actions not covered by the act itself.' ") (citation omitted). When crafting this body of common law, "courts must examine whether the rule, if adopted, would further ERISA's scheme and goals." *Id.*

*Dixon v. Life Ins. Co. Of N. Am.*, 389 F.3d 1179, 1183 (11th Cir. 2004). "ERISA has two central goals: (1) protection of the interests of employees and their beneficiaries in employee benefit plans, id.; and (2) uniformity in the administration of employee benefit plans." *Horton v. Reliance Standard Life Ins. Co.*, 141 F.3d 1038, 1041 (11th Cir. 1998) (citation omitted).

The plaintiff insists that the policy's failure to define the term "accident" results in a "classic ambiguity over what the term 'accident' means.'" (Doc. 27 at 21). First, the plaintiff has not explained why the term "accident" is ambiguous simply because it is undefined.[20] The plaintiff also writes:

---

[20] It has been noted that

the mere fact that a word or a phrase used in a provision in an insurance policy is not defined in the policy does not mean that the word or phrase is inherently ambiguous. . . . If a word or phrase is not defined in the policy, then the court should construe the word or phrase according to the meaning a person of ordinary intelligence would reasonably give it. . . . The court should not define words it is construing based on technical or legal terms.

"An insurance contract is ambiguous if it is susceptible to two or more reasonable interpretations that can fairly be made. When one of these interpretations results in coverage and another results in exclusion, ambiguity exists in the insurance policy." *Dahl-Eimers v. Mut. of Omaha Life Ins. Co.*, 986 F.2d 1379, 1382 (11th Cir. 1993)(citations omitted). This is exactly what is before the Court. That being the case, the policy's terms must be construed against the drafter, and a claimant's reasonable interpretation must be viewed as correct. *White v. Coca-Cola Co.*, 542 F.3d 848, 855 (11th Cir. 2008)(citing *Lee v. Blue Cross/Blue Shield of Alabama*, 10 F.3d 1547, 1551 (11th Cir. 1994)).

(Doc. 27 at 22). This boilerplate language[21] fails to set out exactly which "interpretation" of the term "accident" provides for coverage, probably because there is none in this instance.[22] In any case, coverage was <u>not</u> denied based on the definition of an "accident." It was denied because Mr. Young's accident was not "independent

---

*Lambert v. Coregis Ins. Co.*, 950 So. 2d 1156, 1161-62 (Ala. 2006). While *Lambert* is neither a federal case nor an ERISA case, the Eleventh Circuit has held that "federal courts may look to state law as a model because of the states' greater experience in interpreting insurance contracts and resolving coverage disputes." *Horton*, 141 F.3d 1038, 1041 (11th Cir. 1998).

[21] The court notes that it is by no means settled that this is the "law" which applies to this issue. There are many different views on what makes a contract ambiguous. The *Dahl-Eimers* case, reflects one of them. Notably, it is not an ERISA case, but it has been cited many times in the ERISA context. *See, e.g. Sanctuary Surgical Ctr., Inc. v. Aetna Inc.*, 546 F. App'x 846, 854 (11th Cir. 2013) *cert. denied sub nom. Sanctuary Surgical Ctr., Inc. v. Aetna Health, Inc.*, 134 S. Ct. 1557, 188 L. Ed. 2d 559 (2014); *Billings v. UNUM Life Ins. Co. of Am.*, 459 F.3d 1088, 1094 (11th Cir. 2006)*; Charlebois Deubler v. Prudential Ins. Co. of Am.*, No. 6:11 CV 1307 ORL 37, 2012 WL 7687693, at *8 (M.D. Fla. Nov. 1, 2012) *report and recommendation adopted in part, overruled in part*, No. 6:11 CV 1307 ORL 37, 2013 WL 980260 (M.D. Fla. Mar. 13, 2013); *Monday v. Grp. Benefits Plan for Employees of Martin Brower Co.*, No.: 06 CV 1979 WSD, 2007 WL 4592097, at *7 (N.D. Ga. Dec. 28, 2007).

[22] The plaintiff does state, in a cursory manner, that "accident" could mean "accidental result," or "accidental means." However, she fails to explain how either of those meanings results in AD&D coverage under the facts of this case.

of all other causes."[23]

### 3.  *The Fact That Intoxication Is Mentioned in a Separate Exclusion Does Not Limit the Policy*

The plaintiff next argues that, because "intoxication" is only discussed in the policy in the context of driving under the influence, that it cannot also be an "other cause" as noted by the defendants in their denial of the AD&D claim. (Doc. 27 at 23). The plaintiff writes:

> Against the backdrop of "injury" being an undefined term, the Policy sets forth specific coverage exclusions giving special treatment to nine separate circumstances that may arise where despite there otherwise being an "injury" under the insuring clause. The lone exception involving intoxication reads as follows:
>
>> Limitations: We will not pay a benefit for a loss caused directly or indirectly by: … 6. driving while intoxicated, as defined by the applicable state law where the loss occurred.

Doc. 17-7 at p. 7.

> When reading the policy as a whole, the significance of this exception is that its very existence means that under principles of contract construction, the [d]efendants' interpretation of the insuring clause as also addressing intoxication is untenable. If the [d]efendants were correct that the insuring clause and specifically its definition of injury could be read to exclude accidents involving intoxication from coverage, there would be no need in the same policy to state also that

---

[23] The plaintiff does not appear to claim that the "independently of all other causes" language is ambiguous. Even if she had, the court notes that there is authority where similar language was not construed in favor of the plaintiff to provide coverage. *See, Dixon v. Life Insurance Com. Of North America*, 389 F. 3d 1179, 1180 (11th Cir. 2004) (construing "directly and from no other causes, result[s] in a covered loss").

accidents involving intoxication plus operation of motor vehicles are
excluded, too. The [d]efendants' interpretation violates the canon of
contract construction providing that a policy must be read as a whole in
an effort to give every provision of the policy effect, avoiding any
interpretation that renders a particular provision superfluous or
meaningless. *Johnson v. American United Life Ins. Co.*, 716 F.3d 813,
819-820 (4th Cir. 2013). At the very least, with the policy's lone
mention of intoxication being in the limitation quoted above, the
[d]efendants' reading does not meet the reasonable expectations of the
typical insured. *Ruttenberg v. United States Life Ins. Co. in City of New
York*, 413 F.3d 652, 668 (7th Cir. 2005).

(Doc. 27 at 23-24).

The court finds no merit in this argument. It has been noted that "insurance

policies are notorious for their simultaneous use of both belts and suspenders, and

some overlap is to be expected." *Certain Interested Underwriters at Lloyd's, London

v. Stolberg*, 680 F.3d 61, 68 (1st Cir. 2012). Just because the two provisions at issue

may overlap does not make either of them ambiguous.[24]

## C.   The Statutory Penalties Claim in Count Two Has Been Abandoned

In Count Two, the plaintiff seeks ERISA penalties, under 29 U.S.C. § 1132(c)

and 29 C.F.R. 2560.503-1(h)(2)(iii), for the defendants' alleged failure to provide "all

documents, records and other information relevant to claimant's claim for benefits"

(Count Two). (Doc. 1 at 13). Other than to argue that she needs discovery on this

---

[24] The defendants are clear that they "do not contend that this Court should read a
foreseeability requirement into the definition of 'accident'." (Doc. 28 at 10, n. 6). Accordingly,
the court will not address the plaintiff's argument on that point. (See, doc. 27 at 25-26).

claim, an argument which the court has rejected, the plaintiff has failed to respond to the defendant's motion for summary judgment on this issue. The court therefore deems that claim to be abandoned. *See, e.g.*, *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1322 (11th Cir. 2001) (finding claim abandoned when argument not presented in initial response to motion for summary judgment); *Bute v. Schuller International, Inc.,* 998 F. Supp. 1473, 1477 (N.D. Ga. 1998) (finding unaddressed claim abandoned); *see also Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1326 (11th Cir. 2000) (failure to brief and argue issue at the district court is sufficient to find the issue has been abandoned); *Resolution Trust Corp. v. Dunmar Corp.,* 43 F.3d 587, 599 (11th Cir. 1995); *Hudson v. Norfolk Southern Ry. Co.,* 209 F. Supp. 2d 1301, 1324 (N.D. Ga. 2001); *cf. McMaster v. United States,* 177 F.3d 936, 940-41 (11th Cir. 1999) (claim may be considered abandoned when district court is presented with no argument concerning a claim included in the plaintiff's complaint); *Road Sprinkler Fitters Local Union No. 669 v. Independent Sprinkler Corp.,* 10 F.3d 1563, 1568 (11th Cir. 1994) (concluding that a district court "could properly treat as abandoned a claim alleged in the complaint but not even raised as a ground for summary judgment").[25]

---

[25] Further, the court is under no independent obligation to develop grounds in opposition to summary judgment on behalf of the plaintiff as "the onus is upon the parties to formulate arguments[.]" *Dunmar*, 43 F.3d at 599 (citation omitted); *see also id.* ("There is no burden upon

Further, the regulations cited by the plaintiff "do not apply to [a claim under] § 1132(c)(1), but rather apply to § 1133, which establishes the types of claims procedures that administrators are required to maintain." *Byars v. Coca Cola Co.*, 517 F.3d 1256, 1270 (11th Cir. 2008); *see also*, 29 C.F.R. § 2560.503-1(a) ("In accordance with the authority of sections 503 and 505 of the Employee Retirement Income Security Act of 1974 (ERISA or the Act), 29 U.S.C. 1133, 1135, this section sets forth minimum requirements for employee benefit plan procedures pertaining to claims for benefits by participants and beneficiaries."); *Disanto v. Wells Fargo & Co.*, No. 8:05CV1031 T27MSS, 2007 WL 2460732, at *16 (M.D. Fla. Aug. 24, 2007) ("This Court agrees that the penalties sought by [p]laintiff for any failure by Wells Fargo to provide [p]laintiff's entire claim file pursuant to agency regulation 29 C.F.R. § 2560.503-1(h)(2)(iii) are not authorized by § 1132(c)."). The plaintiff has not shown what information, required to be produced by 28 U.S.C. § 1132(c), was not. Summary judgment is alternatively appropriate as to Count Two for this reason.

## IV.   CONCLUSION

Based on the foregoing, the plaintiff's request to revisit the discovery issue will be **DENIED,** the motion for summary judgment will be **GRANTED,** and this case

---

the district court to distill every potential argument that could be made based upon the materials before it on summary judgment.") (citation omitted)).

will be **DISMISSED with prejudice**. A separate final order will be entered.

**DONE** and **ORDERED** this 31st day of October, 2014.

**VIRGINIA EMERSON HOPKINS**
United States District Judge